

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA

v.

D-1  CHARLES MCRAE,
D-2  CECIL KENT, JR.,
D-3  ALVIN WILLIAMS,

        Defendants.
_____/

Case:5:13-cr-20348
Judge: O'Meara, John Corbett
MJ: Komives, Paul J.
Filed: 05-07-2013 At 04:37 PM
INDI USA V. SEALED MATTER (DA)

VIO:  18 U.S.C. § 1349
      18 U.S.C. § 1347
      18 U.S.C. § 2
      18 U.S.C. § 982

## INDICTMENT

THE GRAND JURY CHARGES:

### General Allegations

At all times relevant to this Indictment:

1. The Medicare program was a federal health care program providing benefits to persons who were over the age of 65 or disabled. Medicare was administered by the Centers for Medicare and Medicaid Services (CMS), a federal agency under the United State Department of Health and Human Services. Individuals who received benefits under Medicare were referred to as Medicare "beneficiaries."

2. Medicare was a "health care benefit program," as defined by Title 18, United States Code, section 24(b).

3. The Medicare program included coverage under two primary components, hospital insurance (Part A) and medical insurance (Part B). Part B of the Medicare Program covered the cost of physicians' services and other ancillary services not covered by Part A. The claims at issue in this indictment were submitted under Part B of the Medicare program.

4. Wisconsin Physicians Service was the CMS-contracted carrier for Medicare Part B, which included psychotherapy and in-home physician services, in the state of Michigan. TrustSolutions, LLC was the Program Safeguard Contractor for Medicare Part A and Part B in the state of Michigan.

5. By becoming a participating provider in Medicare, enrolled providers agreed to abide by the policies and procedures, rules, and regulations governing reimbursement. To receive Medicare funds, enrolled providers, together with their authorized agents, employees, and contractors, were required to abide by all the provisions of the Social Security Act, the regulations promulgated under the Act, and applicable policies and procedures, rules, and regulations, issued by CMS and its authorized agents and contractors.

6. Upon certification, the medical provider, whether a clinic or an individual, was assigned a provider identification number for billing purposes (referred to as a PIN). When the medical provider rendered a service, the provider submitted a claim for reimbursement to the Medicare contractor/carrier that included the PIN assigned to that medical provider. When an individual medical provider was associated with a clinic, Medicare Part B required that the individual provider number associated with the clinic be placed on the claim submitted to the Medicare contractor.

7. Health care providers were given and/or provided with online access to Medicare manuals and services bulletins describing proper billing procedures and billing rules and regulations. Providers could only submit claims to Medicare for services they rendered, and providers were required to maintain patient records to verify that the services were provided as described on the claim form.

8.    To receive reimbursement for a covered service from Medicare, a provider was required to submit a claim, either electronically or using a form (e.g., a CMS-1500 form or UB-92), containing the required information appropriately identifying the provider, patient, and services rendered.

9.    C&M Visiting Physicians, PLC (C&M), also doing business as B&M Visiting Doctors, PLC (B&M), was a Michigan company with a registered address of 2990 West Grand Boulevard Suite 408, Detroit, Michigan 48202. C&M's articles of incorporation were filed on or about April 13, 2003. C&M/B&M purported to provide in-home physician services.

10.   Quality Recreation and Rehabilitation, LLC (QRR) was a Michigan corporation that purported to do business at 2641 West Grand Boulevard, Detroit, Michigan 48208. QRR's articles of incorporation were filed on or about February 4, 2004. QRR purported to provide psychotherapy services.

11.   Procare Rehabilitation, Inc. (Procare) was a Michigan corporation that originally purported to do business at 2641 West Grand Boulevard, Detroit, Michigan 48208. Procare later moved and purported to do business at 8255 Second Avenue, Detroit, Michigan 48202. Procare's articles of incorporation were filed on or about October 14, 2008. Procare purported to provide psychotherapy services.

### Defendants

12.   Defendant CHARLES MCRAE, a resident of Wayne County, Michigan, owned, operated and controlled C&M/B&M. MCRAE was not licensed to practice medicine. C&M/B&M billed Medicare in the name of a licensed physician for purported medical services provided by MCRAE.

13. Defendant CECIL KENT, JR., a resident of Wayne County, Michigan, was an employee of C&M/B&M. KENT was not licensed to practice medicine. C&M/B&M billed Medicare in the name of a licensed physician for purported medical services provided by KENT.

14. Defendant ALVIN WILLIAMS, a resident of Wayne County, Michigan, was an employee of C&M/B&M. WILLIAMS was not licensed to practice medicine. C&M/B&M billed Medicare in the name of a licensed physician for purported medical services provided by WILLIAMS.

## COUNT 1
### (18 U.S.C. § 1349 – Conspiracy to Commit Healthcare Fraud)
### D-1 CHARLES MCRAE
### D-2 CECIL KENT, JR.
### D-3 ALVIN WILLIAMS

15. Paragraphs 1 through 14 of the General Allegations section of this Indictment are re-alleged and incorporated by reference, as though fully set forth herein.

16. From in or around April 2003, and continuing through in or around February 2013, the exact dates being unknown to the Grand Jury, in Wayne County, in the Eastern District of Michigan, and elsewhere, the defendants, CHARLES MCRAE, CECIL KENT, JR., and ALVIN WILLIAMS did willfully and knowingly combine, conspire, confederate and agree with each other and others known and unknown to the Grand Jury, to violate Title 18, United States Code, Section 1347, that is, to execute a scheme and artifice to defraud a health care benefit program affecting commerce, as defined in Title 18, United States Code, Section 24(b), that is, Medicare, and to obtain, by means of materially false and fraudulent pretenses, representations, and promises, money and property owned by, and under the custody and control of, said health care benefit program, in connection with the delivery of and payment for health care benefits, items, and service.

**Purpose of the Conspiracy**

17. It was a purpose of the conspiracy for defendants CHARLES MCRAE, CECIL KENT, JR., ALVIN WILLIAMS and others to unlawfully enrich themselves by, among other things, (a) submitting false and fraudulent claims to Medicare; (b) concealing the submission of false and fraudulent claims to Medicare and the receipt and transfer of the proceeds from the fraud; and (c) diverting proceeds of the fraud for the personal use and benefit of the defendants and their co-conspirators.

**Manner and Means**

The manner and means by which the defendants and their co-conspirators sought to accomplish the purpose of the conspiracy included, among others, the following:

18. CHARLES MCRAE would incorporate C&M in or around April 2003. C&M would do business at 2990 West Grand Boulevard, Suite 408, Detroit, Michigan 48202. MCRAE would execute a Medicare provider enrollment application for C&M, and would obtain a Medicare provider number for C&M and licensed physicians working at C&M.

19. CHARLES MCRAE would control C&M's day-to-day operations. MCRAE and other unlicensed employees would examine, offer purported medical advice to, and write prescriptions for Medicare beneficiaries outside of their homes without a licensed physician present. MCRAE and others would cause C&M to submit claims to Medicare claiming that a licensed physician had provided these beneficiaries medical care in their homes.

20. On or about April 28, 2005, CHARLES MCRAE would change the corporation name of C&M in the state of Michigan to B&M Visiting Doctors, PLC (B&M). B&M would continue to operate at 2990 West Grand Boulevard, Suite 408, Detroit, Michigan 48202. B&M would bill Medicare through the Medicare provider number established for C&M. MCRAE and

Alphonso Berry, M.D. would establish a Medicare number for Dr. Berry that would allow B&M to bill for Medicare for medical services performed by Dr. Berry.

21. CHARLES MCRAE and Alphonso Berry, M.D. would control B&M's daily operations. MCRAE, CECIL KENT, JR., and ALVIN WILLIAMS would examine, offer purported medical advice to, and write prescriptions for Medicare beneficiaries outside of their homes without a licensed physician present.

22. CHARLES MCRAE, CECIL KENT, JR., ALVIN WILLIAMS and others would cause B&M to submit claims to Medicare as if Alphonso Berry, M.D. had provided Medicare beneficiaries medical care in their homes. The medical services billed by B&M were not medically necessary and not provided as billed.

23. Between in or around October 2007, and in or around January 2013, B&M would bill Medicare for approximately $3.8 million in purported in-home physician services. Medicare would pay B&M approximately $2.4 million on these claims.

24. CHARLES MCRAE and Alphonso Berry, M.D. would control B&M's bank accounts. MCRAE, CECIL KENT, JR., ALVIN WILLIAMS and others would receive proceeds of B&M's Medicare billings through those accounts.

25. Marcus Jenkins, Beth Jenkins and others would own and operate QRR and Procare, and would establish a Medicare provider number for Alphonso Berry, M.D. that would allow QRR and Procare to bill Medicare for psychotherapy services provided by Dr. Berry

26. CHARLES MCRAE, CECIL KENT, JR. and ALVIN WILLIAMS would sign documents at QRR and Procare in the name of Alphonso Berry, M.D. to give the false impression that Dr. Berry had provided psychotherapy to Medicare beneficiaries at QRR and Procare.

27. Marcus Jenkins and Beth Jenkins would rely upon the documents signed by CHARLES MCRAE, CECIL KENT, JR. and ALVIN WILLIAMS to cause QRR and Procare to submit claims to Medicare for psychotherapy services purportedly provided to Medicare beneficiaries at QRR and Procare by Alphonso Berry, M.D. The psychotherapy services billed by QRR and Procare were not medically necessary and not provided.

28. From in or around February 2004 through in or around October 2011, QRR and Procare would bill Medicare for approximately $8.2 million in psychotherapy services purportedly provided by Alphonso Berry, M.D. that were not medically necessary and not provided. Medicare would pay QRR and Procare approximately $3.1 million on these claims.

29. CHARLES MCRAE, CECIL KENT, JR., ALVIN WILLIAMS and others would receive proceeds of QRR's and Procare's Medicare billings.

30. CHARLES MCRAE, CECIL KENT, JR., and ALVIN WILLIAMS would transfer and disburse, and cause the transfer and disbursement of, monies from the various corporate accounts of C&M, B&M, QRR and Procare to themselves and others.

All in violation of Title 18, United States Code, Section 1349.

**COUNTS 2-7**
**(18 U.S.C. §§ 1347 and 2 – Health Care Fraud)**
**D-1 CHARLES MCRAE**
**D-2 CECIL KENT, JR.**
**D-3 ALVIN WILLIAMS**

31. Paragraphs 1 through 14 of the General Allegations section of this Indictment are re-alleged and incorporated by reference as though fully set forth herein.

32. On or about the dates enumerated below, in Wayne County, in the Eastern District of Michigan, and elsewhere, CHARLES MCRAE, CECIL KENT, JR., and ALVIN WILLIAMS, in connection with the delivery of and payment for health care benefits, items, and services, did

knowingly and willfully execute, and attempt to execute, a scheme and artifice to defraud a health care benefit program affecting commerce, as defined in Title 18, United States Code, Section 24(b), that is, Medicare, and to obtain, by means of materially false and fraudulent pretenses, representations, and promises, money and property owned by, and under the custody and control of Medicare, in connection with the delivery of and payment for health care benefits, items and services.

### Purpose of the Scheme and Artifice

33. It was the purpose of the scheme and artifice for the defendants and co-conspirators to unlawfully enrich themselves through the submission of false and fraudulent Medicare claims for psychotherapy services that were not medically necessary and were not performed.

### The Scheme and Artifice

34. Paragraphs 17 through 30 of Count 1 of this Indictment are re-alleged and incorporated by reference as though fully set forth herein as a description of the scheme and artifice.

### Acts in Execution of the Scheme and Artifice

35. On or about the dates specified as to each count below, in Wayne County, in the Eastern District of Michigan, and elsewhere, CHARLES MCRAE, CECIL KENT, JR., and ALVIN WILLIAMS, acting in concert with and aided by others, in connection with the delivery of and payment for health care benefits, items, and services, did knowingly and willfully execute, and attempt to execute, the above-described scheme and artifice to defraud a health care benefit program affecting commerce, that is, Medicare, and to obtain, by means of materially false and

fraudulent pretenses, representations, and promises, money and property owned by, and under the custody and control of said health care benefit program.

| Count | Defendant | Medicare Beneficiary | On or About Claim Date | Description of Item Billed | Approximate Amount Billed to Medicare |
|---|---|---|---|---|---|
| 2 | Charles McRae | D.S. | 7/20/2011 | 99350 - HOME VISIT ESTABLISHED PT UNSTABLE / SIGNIFICANT NEW PROBLEM | $175.00 |
| 3 | Charles McRae | D.S. | 10/18/2011 | 99349 - HOME VISIT ESTABLISHED PT MOD TO HIGH SEVERITY | $150.00 |
| 4 | Cecil Kent, Jr. | L.S. | 7/29/2011 | 99349 - HOME VISIT ESTABLISHED PT MOD TO HIGH SEVERITY | $150.00 |
| 5 | Cecil Kent, Jr. | M.B. | 7/29/2011 | 99349 - HOME VISIT ESTABLISHED PT MOD TO HIGH SEVERITY | $150.00 |
| 6 | Alvin Williams | C.T. | 7/29/2011 | 99349 - HOME VISIT ESTABLISHED PT MOD TO HIGH SEVERITY | $150.00 |
| 7 | Alvin Williams | R.L. | 7/29/2011 | 99349 - HOME VISIT ESTABLISHED PT MOD TO HIGH SEVERITY | $150.00 |

In violation of Title 18, United States Code, Sections 1347 and 2.

### CRIMINAL FORFEITURE 1
(18 U.S.C. § 982)
D-1 CHARLES MCRAE
D-2 CECIL KENT, JR.
D-3 ALVIN WILLIAMS

36. The allegations contained in Counts One through Seven are re-alleged and incorporated by reference as though fully set forth herein for the purpose of alleging forfeiture to the United States of America of any property, real or personal obtained by the defendants, that is, CHARLES MCRAE, CECIL KENT, JR., and ALVIN WILLIAMS, by commission of the offenses charged in Counts One through Seven, pursuant to the provisions of 18 U.S.C. § 982(a)(7) and 28 U.S.C. § 2461.

37. As a result of the violation of Title 18, United States Code, Section 1349, as set forth in this Indictment, defendants CHARLES MCRAE, CECIL KENT, JR., and ALVIN WILLIAMS shall forfeit to the United States any property, real or personal, constituting, or derived from, any proceeds obtained, directly or indirectly, as a result of such violation, pursuant to 18 U.S.C. § 982(a)(7) and 28 U.S.C. § 2461.

38. As a result of the violations of Title 18, United States Code, Sections 1347 and 2, as set forth in this Indictment, defendants CHARLES MCRAE, CECIL KENT, JR., and ALVIN WILLIAMS shall forfeit to the United States any property, real or personal, that constitutes or is derived from, gross proceeds traceable to the commission of such violations, pursuant to 18 U.S.C. § 982(a)(7) and 28 U.S.C. § 2461.

39. <u>Substitute Assets</u>: If the property described above as being subject to forfeiture, as a result of any act or omission of the defendant:

    a. Cannot be located upon the exercise of due diligence;

    b. Has been transferred or sold to, or deposited with, a third party;

    c. Has been placed beyond the jurisdiction of the Court;

    d. Has been substantially diminished in value; or

    e. Has been commingled with other property that cannot be subdivided without difficulty;

it is the intent of the United States, pursuant to 21 U.S.C. § 853(p) as incorporated by 18 U.S.C. § 982(b) and/or 28 U.S.C. § 2461, to seek to forfeit any other property of defendants CHARLES MCRAE, CECIL KENT, JR., and ALVIN WILLIAMS up to the value of the forfeitable property described above.

40. Money Judgment: A sum of money equal to at least $5,651,871.41 in United States currency, or such amount as is proved at trial in this matter, representing the total amount of proceeds obtained as a result of defendant's violations of 18 U.S.C. §§ 1349 and 1347, as alleged in this Indictment.

All pursuant to Title 18, United States Code, Section 982(a)(7).

THIS IS A TRUE BILL.

s/GRAND JURY FOREPERSON
Grand Jury Foreperson

BARBARA L. MCQUADE
UNITED STATES ATTORNEY

s/WAYNE F. PRATT
WAYNE F. PRATT
Chief, Health Care Fraud Unit
Assistant United States Attorney
211 W. Fort Street, Suite 2001
Detroit, Michigan 48226

s/GEJAA T. GOBENA
GEJAA T. GOBENA
Deputy Chief
Criminal Division, Fraud Section
United States Department of Justice
1400 New York Avenue, N.W., Eighth Floor
Washington, D.C. 20005
(202) 305-1310

s/WILLIAM G. KANELLIS
WILLIAM G. KANELLIS
Trial Attorney
Criminal Division, Fraud Section
United States Department of Justice
1400 New York Avenue, N.W., Eighth Floor
Washington, D.C. 20005
(202) 674-5661
william.kanellis2@usdoj.gov

Dated: May 7, 2013

# ORIGINAL

United States District Court
Eastern District of Michigan

**Criminal Case Cov**

Case: 5:13-cr-20348
Judge: O'Meara, John Corbett
MJ: Komives, Paul J.
Filed: 05-07-2013 At 04:37 PM
INDI USA V. SEALED MATTER (DA)

NOTE: It is the responsibility of the Assistant U.S. Attorney signing this form to com[

**Reassignment/Recusal Information** This matter was opened in the USAO prior to August 15, 2008 [ ]

| Companion Case Information | Companion Case Number: |
|---|---|
| This may be a companion case based upon LCrR 57.10 (b)(4)[1]: | Judge Assigned: |
| ☐ Yes        X No | AUSA's Initials: WLK |

Case Title: USA v. CHARLES MCRAE, et. al.

County where offense occurred: Wayne County

Check One:        x Felony        ☐ Misdemeanor        ☐ Petty

  X   Indictment/_____Information --- **no** prior complaint.
_____Indictment/_____Information --- based upon prior complaint [Case number:
_____Indictment/_____Information --- based upon LCrR 57.10 (d) *[Complete Superseding section below]*.

## Superseding Case Information

Superseding to Case No: _____    Judge: _____
  ☐   Original case was terminated; no additional charges or defendants.
  ☐   Corrects errors; no additional charges or defendants.
  ☐   Involves, for plea purposes, different charges or adds counts.
  ☐   Embraces same subject matter but adds the additional defendants or charges below:

**Defendant name**                **Charges**                **Prior Complaint (if applicable)**

---

**Please take notice that the below listed Assistant United States Attorney is the attorney of record for the above captioned case.**

May 7, 2013
Date

WILLIAM G. KANELLIS
Trial Attorney
United States Department of Justice
Criminal Division, Fraud Section
1400 New York Avenue, N.W.,
Bond Building, Third Floor
Washington, D.C. 20005
Phone: (202) 674-5661
Fax: (313) 226-2621
Email: William.Kanellis2@usdoj.gov

---

[1] Companion cases are matters in which it appears that (1) substantially similar evidence will be offered at trial, (2) the same or related parties are present, and the cases arise out of the same transaction or occurrence. Cases may be companion cases even though one of them may have already been terminated.

10/13/09